**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

*vs.*                                          **CRIMINAL ACTION NO. 1:09CR3**

**JOSEPH VANSACH,**

        **Defendant.**

### REPORT AND RECOMMENDATION/OPINION

Defendant was Indicted, along with co-defendant Angel Roldan, by a Grand Jury sitting in the Northern District of West Virginia on January 6, 2009, on charges of "aiding and abetting each other at a place within the special maritime and territorial jurisdiction of the United States, mainly United States Penitentiary Hazelton, on land acquired for the use of the United States and under its jurisdiction, did assault the person known to the Grand Jury as A.D. with a dangerous weapon, with intent to do bodily harm to A.D., without just cause and excuse, in violation of Title 18 USC sections 113(a)(3) and 7(3) and 2 (Count One), and individually on charges of being an inmate in the custody of the Bureau of Prison in possession of a prohibited object, to wit, an object that was designed and intended to be used as a weapon, in violation of Title 18, USC sections 1791(a)(2) and (b)(3) (Count Two). Defendant was arraigned on February 5, 2009, at which time he entered a plea of "Not Guilty." Since that date, Defendant moved the Court to be permitted to proceed *pro se* with attorney Scott Radman acting as standby counsel. The Court granted Defendant's motion.

On August 3, 2009, Defendant, *pro se*, filed five motions with the Court: 1) "Motion for the

Defendant to Challenge the Grand Jury on the Grounds that it was not Lawfully Drawn, Summoned or Selected under F.R.C.P. Rule 6(b)(1)" [Docket Entry 95]; 2) Motion to Dismiss Video Surveilence [sic] Videotapes without the use of Witness and Victim to the Alleged Charges" [Docket Entry 96]; 3) Motion Challenging Dismissal of the Indictment Based on Selective Prosecution" [Docket Entry 97]; 4) "Motion to Dismiss under [sic] the Grounds that the Defendant did not Commit an Offense Against the United States" [Docket Entry 98]; and 5) "Motion to Dismiss under [sic] Grounds of Prejudice Against the Defendant" [Docket Entry 99]. All five motions were referred to the undersigned United States Magistrate Judge on August 19, 2009, by United States District Judge Irene M. Keeley [Docket Entry 103].

On August 24, 2009, came the defendant, Joseph Vansach, *pro se*, and with stand by counsel Scott Radman, and the United States by its Assistant United States Attorney David Godwin for hearing on the motions.

1. **"Motion for the Defendant to Challenge the Grand Jury on the Grounds that it was not Lawfully Drawn, Summoned or Selected under F.R.C.P. Rule 6(b)(1)" [Docket Entry 95].**

Defendant moves the Court to dismiss the indictment in its entirety, arguing that U.S.P. Hazelton is in Preston County, West Virginia, and the Grand Jury should therefore have been seated at the Elkins point of holding court. He further argues that each grand juror must reside in Barbour, Grant, Hardy, Mineral, Pendleton, Pocahontas, Preston, Randolph or Tucker Counties. It is undisputed that the Grand Jury that indicted Defendant was seated at the Clarksburg point of holding Court. First, however, there is no requirement that the Grand Jury sit in any one particular division of a district or that all or any one of the Grand Jurors reside in that division. See Salinger v. Loisel, 265 U.S. 224 (1924), which holds:

> . . . [H]ad Congress intended to put an end to the prevailing practice of impaneling a grand jury for the entire district at a session in some division and of remitting the indictments to the several divisions in which the offenses were committed, unless the accused elected otherwise, it is but reasonable that the intention would have been expressed in apt terms, such as were used in some of the exceptional special statutes . . . . In many divisions only one term is held in a year. If persons arrested and committed for offenses in those divisions were required to await the action of a grand jury impaneled there, periods of almost a year must elapse in many instances before a trial could be had or an opportunity given for entering a plea of guilty and receiving sentence.

More important in this case, however, is the fact that, U.S.P. Hazelton is located in Preston County. Effective November 1, 2007, Preston County was moved from the Elkins Division to the Clarksburg Division of the Northern District of West Virginia. Defendant's argument is therefore without merit.

The undersigned United States Magistrate Judge therefore respectfully **RECOMMENDS** Defendant's "Motion for the Defendant to Challenge the Grand Jury on the Grounds that it was not Lawfully Drawn, Summoned or Selected under F.R.C.P. Rule 6(b)(1)" [Docket Entry 95] be **DENIED**.

2. **"Motion to Dismiss Video Surveilence [sic] Videotapes Without the use of Witness and Victim to the Alleged Charges" [Docket Entry 96].**

Defendant moves the Court to dismiss the video surveillance videotapes if the United States is not going to produce the victim or actual eyewitness "under the requirement for authentication under [F.R.C.P ] Rule 901." F.R.E. 901(a) provides:

> The requirements of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

In United States v. Branch, 970 F.2d 1368 (4th Cir. 1992), the Fourth Circuit explained simply that "[b]efore admitting evidence for consideration by a jury, the district court must determine whether

3

its proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." Establishing a formal chain of custody of evidence is no longer required. Rather, it is sufficient for the party offering the evidence simply to satisfy the trial court that the item is what it purports to be and has not been altered. United States v. Howard-Arias, 679 F.2d 363 (4th Cir. 1982).

The undersigned interprets Defendant's motion as a motion in limine. At this time the Court cannot know precisely what the United States' evidence will be and who it will call as a witness. AUSA Godwin advises that the "tape" in question is not actually a videotape, but was digitally recorded by a computerized recording system. He also advises that the United States plans to call Lt. Petrisko, the custodian of the record pursuant to F.R.E. 803(6), to testify that the recording is what the United States claims it is.

Although the undersigned cannot at this time determine whether the recording will ultimately be deemed admissible by the Court, I find, contrary to Defendant's argument, that the United States is <u>not</u> required to produce the alleged victim or an eyewitness to the events depicted on the recording in order to authenticate it.

> A videotape which clearly identified the persons depicted in it may be self-authenticating (i.e., does not require additional authentication testimony from a witness present at the scene depicted in the video). See, e.g., United States v. Damrah, 412 F.3d 618 (6th Cir. 2005).

The undersigned therefore recommends "Defendant's Motion to Dismiss Video Surveilance [sic] Videotapes Without the Use of Witness and Victim to the Alleged Charges [Docket Entry 96] be **DENIED**.

3. **"Motion Challenging [sic] Dismissal of the Indictment Based on Selective Prosecution" [Docket Entry 97].**

Defendant moves the Court for dismissal based on selective prosecution. As grounds

4

Defendant states that Lt. Petrisko of U.S.P. Hazelton told inmates that he did not care about prosecuting them, but that he did not like Defendant "for being a male white in a Latino organization and wants him prosecuted for the purpose of his own satisfaction and dislike of the defendant Joseph Vansach and his race crossing to the other side." Defendant further asserts that Latino, Indian, and Black "organization" members are subjected to "prosecution" at all cost, but white organization members committing the same acts are less likely to be prosecuted by Lt. Don Petrisko and the Attorney Generals' Office. Defendant uses as an example Roger Charles, who he asserts is a white inmate who committed "at least three of the exact criminal acts charged against the defendant . . ."

In United States v. Olvis, 97 F.3d 739 (4th Cir. 1996), the defendant moved to dismiss the indictment, claiming selective prosecution based upon race. In support of the motion the defendant argued that five unindicted white individuals were similarly situated and that 90% of those indicted for crack cocaine trafficking in the area were black,. The district court found that the defendant's showing was sufficient to support discovery on his selective prosecution claim. When the government still refused discovery, the district court dismissed the indictment. The Fourth Circuit reversed, finding that the defendant had "failed to satisfy the rigorous standard recently articulated by the Supreme Court to obtain discovery for selective-prosecution claims . . . ." Id. at 741. The Court held:

> When acting on probable cause that a crime has been committed, a government prosecutor generally enjoys unfettered discretion in the decision whether to prosecute. Because law enforcement is a core executive constitutional function, judicial intrusion into prosecutorial decisions is justified only when the constitution requires it . . . .
>
> To establish a selective-prosecution claim, a defendant must demonstrate that the prosecution had a discriminatory effect and that it was motivated by a discriminatory purpose. This requires the defendant to establish both: (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith."

Id. at 743.

Defendant further asks for discovery in order to make the required showing, including log books from U.S.P. Hazelton for assaults that occurred over the last 22 months, segregation log books for those assaults, inmate Roger Charles' disciplinary record and punishment, and the Grand Jury transcripts in his own case. The Fourth Circuit also held:

> [T]o obtain discovery in support of a selective-prosecution claim, a defendant must produce some evidence making a credible showing of both discriminatory effect and discriminatory intent. Just as the standard for proving a selective prosecution claim is a rigorous one, so too is the evidentiary threshold for obtaining discovery from the government to support such a claim.

Id.

The undersigned first finds that Defendant's claims are, for the most part, directed toward Lt. Petrisko, who is an employee of the BOP, and not the "prosecutor," in this case the United States Attorney. In order to show selective prosecution he must show that the prosecutor's – not prison employees'- motives and the effect were discriminatory. Defendant has not met the requirement of establishing, as to the United States Attorney's office, both: (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the United States'"decision to prosecute was invidious or in bad faith." Defendant offers in support only one individual a "white Caucasian organization member . . . Roger Charles, who commited [sic] at least three of the exact criminal acts charged against the defendant . . . .and was not prosecuted once for the same type of offense that is here today . . . ." Again, in Olvis, the Fourth Circuit states: "[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." Id. at 744. Here, Defendant states only that Charles' U.S.P. Hazelton records, punishments and segregation time will speak for

itself in the log books inside the institution." The Court first finds there is no showing that Charles is similarly situated, in that there may be "legitimate prosecutorial factors" that are distinguishable from Defendant's case. Further, even if the Court did find that Charles is similarly situated, he is not of a "different race" than Defendant, who states on the record that he is white. Finally, and most significantly, Defendant has made absolutely no showing that the United States Attorney's Office's decision (and not Lt. Petrisko's) to prosecute "was invidious or in bad faith." He has also not made a credible showing of both discriminatory effect and discriminatory intent as regards the United States Attorney's office or AUSA Godwin in particular.

Defendant also argues that AUSA David Godwin retaliated against him by raising the term of incarceration in successive offered plea agreements from 24 months to 36 months. Defendant argues that AUSA Godwin did this in retaliation for Defendant exercising his rights -- in particular, to represent himself and to file motions. Defendant's argument in this regard has no merit. In Bordenkircher v. Hayes, 434 U.S. 357 (1978). The United States Supreme Court found:

> To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional . . . . But in the "give-and-take of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

Id. at 363 (internal citations omitted). Further:

> Plea baragining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial.

Id. Finally:

> While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable" – and permissible – "attribute

7

> of any legitimate system which tolerates and encourages the negotiation of pleas . . . . It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

Id. at 364 (internal citations omitted). While Bordenkircher pertained to a prosecutor filing a subsequent indictment containing more serious charges, it applies at least equally to a claim that a subsequent plea offer contained harsher penalties than an earlier, rejected offer. Defendant was aware of the charges against him and had been advised expressly by the Court at his arraignment on February 5, 2009, of the possible penalties should he be found guilty of those charges. These penalties included up to ten years imprisonment under Count One and up to five years imprisonment under Count Two. The government's offered pleas of 24 months and 36 months (according to Defendant) are well within the maximum term of imprisonment to which he could be subjected if convicted. The penalty was therefore not increased and Defendant cannot claim surprise. Defendant was free to accept or reject either or both of the government's plea offers.

In consideration of all which, the undersigned **RECOMMENDS** Defendant's "Motion Challenging Dismissal of the Indictment Based on Selective Prosecution" as well as the motion to dismiss based on retaliation contained within it [Docket Entry 97] be **DENIED**.

**4. Motion to Dismiss Under [sic] the Grounds that the Defendant did not Commit an Offense Against the United States [Docket Entry 98].**

Defendant moves the Court to dismiss the charges against him on the grounds that he did not commit an offense against the United States. In support of his motion, Defendant argues that the alleged victim of the offense is not an employee of the United States, and is not, in fact, a citizen of the United States. He contends that the alleged victim, Albert Deluna, will be deported back to

Mexico upon the completion of his sentence. Defendant argues that the United States cannot become the plaintiff where the alleged victim has refused to file charges and does not wish to proceed with any criminal charges. Defendant cites 18 U.S.C. section 2, as stating "whosoever commits an offense against the United States . . ."

Defendant's claim is without merit. Criminal law is defined as follows:

> The substantive criminal law is that law which for the purpose of preventing harm to society, (a) declares what conduct is criminal, and (b) prescribes the punishment to be imposed for such conduct. It includes the definition of specific offenses and general principles of liability. Substantive criminal laws are commonly codified into criminal or penal codes: e.g., U.S.C.A. Title 18 . . . .

Black's Law Dictionary 261 (6th ed. 1991).. Defendant is charged with violations of Title 18, United States Code, sections 113(a)(3) and 7(3) and 2 (Count One) and Title 18 United States Code sections 1791(a)(2) and (b)(3), which are specific criminal offenses codified in U.S.C.A. Title 18. Further, criminal prosecution is defined as:

> [a]n action or proceeding instituted in a proper court on behalf of the public, for the purpose of securing the conviction and punishment of one accused of crime. A proceeding instituted by the state to obtain punishment against the person charged with and found guilty of a public offense . . . .

Id. (emphasis added). Finally, the prosecuting attorney is:

> [t]he public officer who is appointed or elected in each judicial district, circuit, or county, to conduct criminal prosecutions on behalf of the State or people. Federal prosecutors (U.S. attorneys) represent the United States in prosecuting federal crimes.

Id. at 849 (emphasis added).

Defendant is charged with crimes specifically designated as federal crimes under Title 18, U.S.C. The United States is therefore the proper party to the criminal action, and, in fact, the victim could not bring a criminal action on his own behalf.

9

The undersigned therefore **RECOMMENDS** Defendant's "Motion to dismiss Under [sic] the Ground that the Defendant did not Commit an Offense against the United States" [Docket Entry 98] be **DENIED**.

**5. "Motion to Dismiss under [sic] Grounds of Prejudice Against the Defendant" [Docket Entry 99].**

Defendant moves the Court to dismiss his case on the grounds that "[t]he key pieces of evidence, namely the videotape, compact disk and photographs have been comprimised [sic] by a break in the chain of custody . . . thusly tainting the evidence, which may have now been electronically altered by person/persons who are agents in the governmental employement [sic] in a federal agency therein."

First, as already stated, establishing a formal chain of custody of evidence is no longer required. Rather, it is sufficient for the party offering the evidence simply to satisfy the trial court that the item is what it purports to be and has not been altered. United States v. Howard-Arias, 679 F.2d 363 (4th Cir. 1982).

Defendant offers absolutely no evidence that the digital recording in this case has been altered or tampered with. He has offered absolutely no evidence that there was any break in the chain of custody. Defendant asserts, however, that one of the reasons he has no evidence is that he has not had any meaningful opportunity to view the recording, only having seen it on an officer's laptop from about eight feet away. The United States advised that agents had provided Defendant's stand-by counsel with the recording and installed on counsel's laptop the software required to view the recording. Defendant's stand-by counsel acknowledged that he had been provided the recording and software, but advised that he had not been permitted to bring his laptop with the recording on

it to Defendant at the prison, and that he had therefore not shown the recording to Defendant.

The United States then stated on the record that Defendant would be given the opportunity to view the recording.

Because Defendant has not shown any evidence at this time that the recording was altered the undersigned **RECOMMENDS** that Defendant's "Motion to Dismiss under [sic] Grounds of Prejudice against Defendant" [Docket Entry 99] be **DENIED** without prejudice.

## RECOMMENDATION

For the reasons herein stated, it is **RECOMMENDED** that Defendant's "Motion for the Defendant to Challenge the Grand Jury on the Grounds that it was not Lawfully Drawn, Summoned or Selected under F.R.C.P. Rule 6(b)(1)" [Docket Entry 95]; "Motion to Dismiss Video Surveilance [sic] Videotapes without the use of Witness and Victim to the Alleged Charges" [Docket Entry 96]; "Motion Challenging Dismissal [sic]of the Indictment Based on Selective Prosecution" [Docket Entry 97]; and "Motion to Dismiss under [sic] the Grounds that the Defendant did not Commit an Offense Against the United States" [Docket Entry 98] all be **DENIED**, and Defendant's "Motion to Dismiss under [sic] Grounds of Prejudice Against the Defendant" [Docket Entry 99] be **DENIED without prejudice**.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and

recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record and to send a copy by certified mail, return receipt requested, to Defendant *pro se*.

Respectfully submitted this 31st day of August, 2009.

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE